UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re                              )
                                   )
DOUGLAS W. MEYN,                   )   Case No. 8:04-bk-19108-KRM
                                   )   Chapter 7
        Debtor.                    )
                                   )
_____)

MEMORANDUM OPINION AND ORDER GRANTING MOTION
BY UNITED STATES TRUSTEE TO DISMISS CHAPTER 7 CASE

Is a debtor with nearly $900,000 in exempt assets and at least $1,000 per month in monthly disposable income eligible for relief under Chapter 7? The United States Trustee ("UST") argues that granting a Chapter 7 discharge to this debtor, who has the ability to repay a material portion of his debts and who did not provide complete and accurate disclosures, would be a substantial abuse of Chapter 7.[1] After considering the totality of the circumstances of this case -- derived from the testimony at trial, the related exhibits, the post-trial memoranda submitted by the debtor and the UST -- the Court concludes that granting this debtor a Chapter 7

---

[1] On January 3, 2005, the United States Trustee filed a Motion to Dismiss this Chapter 7 Case under 11 U.S.C. § 707(b), alleging that granting the debtor a discharge would be a substantial abuse of the provisions of a Chapter 7. It is undisputed that this case involves primarily "consumer debts." The U.S. Trustee alternatively pled 11 U.S.C. § 707(a), stating that this case should be dismissed for "cause."

discharge would be a substantial abuse of Chapter 7. Accordingly, the UST's motion will be granted.

**BACKGROUND**

*The Debtor's Financial Condition*

At one time, the debtor was a highly paid senior executive with a national telecommunications company, making nearly $330,000 per year.[2] He lived in a large home in a gated, country club community in the Tampa suburbs. In recent years, however, he has gone through a costly divorce, a job loss, and periods of un- and under-employment.

The debtor's divorce was bitterly contested from 2001 until the final judgment was entered on January 7, 2004. The related legal fees are said to be in excess of $138,000.[3] The state court awarded the debtor's former spouse $2,700 per month in permanent alimony and directed the debtor to make a cash payment to her of $58,730.50 as an "equitable distribution."[4]

---

[2] The debtor's tax return for 2002 reported income of $327,872.00.

[3] More than 85% of the $310,346 of claims filed in this case are related to the divorce. See notes 12-14 *infra* and accompanying text.

[4] On March 9, 2005, the debtor initiated an adversary proceeding to determine the dischargeability, under 11 U.S.C. § 523(a)(15), of the former spouse's claim of $58,730.50. The trial in this proceeding is abated pending the outcome of the UST's Section 707(b) motion.

2

The debtor's unemployment began in May 2002, when he was terminated from his senior executive position after 23 years of service. He received severance, including $152,000, certain stock options, and health and life insurance. The debtor did not work between May and November 2002. In February 2003, after a three month stint with another telecommunications company, the debtor obtained employment as a department manager for a national retail electronics company. His annual salary is now about $72,000, plus bonuses.

In 2004, the debtor remarried. His wife earns about $95,000 per year, plus bonuses, from her job as a product manager for a technology company. Her total income for 2004 was about $113,500. Their combined household income is about $185,000, before the debtor earns any bonuses.[5]

The debtor and his wife live in a 4,000 square foot house estimated to be worth about $450,000, with an estimated equity of about $110,000 after taking into account a $340,000 first mortgage. The debtor has another $750,000 of exempt assets in an Individual Retirement Account.[6]

---

[5] Their combined reported income in 2004 was $239,859.

[6] The IRA is comprised of assets rolled over from his former employer's retirement plan. The exempt status of the homestead and IRA is not contested.

*The 2003 Chapter 13 Case*

In April 2003, the debtor filed for relief under Chapter 13. The schedules listed $75,763.62 in unsecured debt, with the debtor's former spouse and her counsel being scheduled as creditors holding unliquidated claims in undetermined amounts. A federal income tax claim in the amount of $33,427.00, was also scheduled. The Chapter 13 case was dismissed on January 26, 2004, for the debtor's failure to confirm a plan.

*The Present Chapter 7 Case*

The debtor filed this case on September 30, 2004, about eight months after his Chapter 13 case was dismissed. Approximately one month before filing this case, the debtor received $60,000 from a former employer's "key man" life insurance policy. After taxes, the debtor netted $40,658, which he used to satisfy the delinquent 2002 income taxes ($34,732) and to make a charitable contribution to his church ($3,100). Neither the receipt of the $60,000, nor the pre-petition expenditures was disclosed in the debtor's Statement of Financial Affairs. He did not schedule the debts owed to his former spouse and her attorney. The debtor also did not

4

disclose the stock options he received from the 2002 severance package.[7]

The schedules initially filed in this case listed $115,136 of unsecured debts.[8] After the UST filed the Section 707(b) motion, the debtor amended his Schedule F to add the claim of his former spouse and her attorney, as a disputed unsecured claim of $60,000. Scheduled unsecured debts were stated to be $173,572.[9]

Initially, the debtor reported total monthly income of $4,668 (after payroll deductions) and expenses of $8,683, resulting in a net monthly income of a *negative* $4,015. After the UST filed the Section 707(b) motion, the debtor amended Schedules I and J to add $6,754.47 of his wife's monthly income and $2,635 of additional monthly expenses. As a result, the amended Schedules I and J show net disposable income of about $104 per month.

---

[7] At trial, he testified that the options have no value because the exercise price exceeds the current market value of the stock.

[8] These include credit card debts totaling $81,128.73, claims of furniture and electronic stores, totaling $5,007.62, and the claim of the debtor's divorce attorney, $29,000.

[9] Claims totaling $310,346.03 have been filed in this Chapter 7 case.

The testimony at trial, however, established that amended Schedule J overstated the debtor's largest expenses by at least $700 per month: (1) the mortgage payment on the $450,000 home is stated to be $3,400 per month, but it is actually $3,000; alimony is stated to be $3,000 per month, but it is actually $2,700. By the debtor's own admissions, he has at least $700 per month of disposable income in addition to the $104 initially stated, for a total of $804 of monthly disposable income.

## **DISCUSSION**

The court may dismiss a Chapter 7 case, pursuant to Section 707(b) of current law, if it determines that the granting of relief would be a substantial abuse of Chapter 7. The term "substantial abuse" is not defined in the statute; but, there is a statutory presumption in favor of granting the relief requested by the debtor.[10]

In the absence of controlling Eleventh Circuit authority, bankruptcy courts in this District have examined

---

[10] This case is governed by the provisions of Section 707(b) prior to the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") which becomes effective, as to Section 707(b), on October 17, 2005. Under current law, the court should dismiss a Chapter 7 case only when a substantial abuse is clearly present. *In re Hall*, 258 B.R. 45, 51-52 (Bankr. M.D. Fla. 2001).

the "totality of the circumstances" to determine whether to dismiss a case for "substantial abuse." *See In re Shields*, 322 B.R. 894, 896-97(Bankr. M.D. Fla. 2005); In *re Luikart*, 319 B.R. 1 (Bankr. M.D. Fla. 2003) (applying "totality of circumstances" test by viewing together the debtor's ability to pay, her economics, and her conduct in failing to accurately disclose income and expenses); *In re Brown*, 301 B.R. 607 (Bankr. M.D. Fla. 2003) (applying the "totality of circumstances" test and granting motion to dismiss); *In re Hall*, 258 B.R. 45, 51 (Bankr. M.D. Fla. 2001) (considering not only the debtor's ability to pay, but the totality of the circumstances, to dismiss Chapter 7 case).

In employing this approach, courts have considered various factors, including: (1) whether the Chapter 7 petition was filed because of a sudden unforeseen or catastrophic event such as sudden illness, disability or unemployment; (2) whether the debtor's standard of living would be substantially improved by the discharge; (3) the debtor's age, health, dependents and family responsibilities; (4) the debtor's eligibility for Chapter 13 and whether creditors would receive a meaningful distribution in a Chapter 13 case; (5) whether the debtor incurred cash advances and made consumer purchases far and in excess of his ability to

pay; (6) whether the debtor's proposed family budget is excessive or unreasonable; (7) whether the debtor's schedules and statement of current income and expenses reasonably and accurately reflect the true financial condition of the debtor; (8) whether the petition was filed in good faith; and (9) whether the debtor has the ability to repay creditors. *In re Shields*, 322 B.R. at 896-97; *In re Brown*, 301 B.R. 607, 611 (Bankr. M.D. Fla. 2003); *In re Engskow*, 247 B.R. 314, 316-17 (Bankr. M.D. Fla. 2000).

The primary factor, however, is whether the debtor has the ability to repay even a portion of his debts from future income. *See In re Shields*, 322 B.R. at 897; *In re Leung*, 311 B.R. 626, 631 (Bankr. S.D. Fla. 2004). The "totality of the circumstances" approach involves an evaluation of the other stated factors as exacerbating or mitigating the apparent abuse from the debtor's ability to repay. *See In re Luikart*, 319 B.R. at 4 (Bankr. M.D. Fla. 2003). A finding of "bad faith" or dishonest conduct is not required for a Section 727(b) dismissal. *See In re Green*, 934 F.2d 568 (4th Cir. 1991).

In this case, the debtor's amended Schedule J overstated his mortgage and alimony expenses by $700. Based on these errors alone, the debtor has at least $804 of

disposable income that would be available to fund a Chapter 13 plan. The UST argues that the debtor has as much as $1,524 per month of disposable income, because other monthly expenses are similarly inflated -- home maintenance, transportation, recreation, and insurance -- by a total of $720 per month. The Court agrees, in part, that these expenses are overstated by at least $200 per month.[11] *See In re Weber*, 208 B.R. 575, 577 (Bankr. M.D. Fla. 2003); *In re Brown*, 301 B.R. 607, 611-12 (Bankr. M.D. Fla. 2003) (a court may find a debtor's specific expenses excessive or unreasonable). The Court finds that the debtor has at least $1,000 per month of disposable income.

The debtor therefore has the ability to fund a meaningful Chapter 13 plan from his disposable income. *See In re Shields*, 322 B.R. at 897-99; *In re Leung*, 311 B.R. at 631-32. With at least $1,000 in monthly disposable income, the debtor could make Chapter 13 plan payments of at least $60,000 over 60 months.

Although the debtor has suffered reversals in his life over the past few years, he continues to enjoy an upper-

---

[11] Although the court is not to consider a debtor's charitable contributions in making a determination of "substantial abuse," 11 U.S.C. § 707(b), the debtor's disclosure of such contributions further undermines the credibility of his other stated expenses. In amended Schedule J, charitable contributions are stated to be $425 per month, or $5,100 per year; but the debtor's check register (UST Exh. 11) reveals a total of only $640 in charitable contributions in the 14-month period between March 2003 and May 2004.

middle class lifestyle. Unlike the "unfortunate debtor" who needs a fresh start, the debtor in this case has the ability to repay a meaningful amount of his debts, while continuing to enjoy a lifestyle defined by a 4,000 square foot house, two cars, more than $185,000 in annual household income, and about $750,000 in an IRA.

This case was not filed because of a sudden catastrophic event. The principal reason for filing appears to be to obtain the discharge of up to $268,810.31 of debts related to the debtor's divorce, as set forth below:

| | |
|---|---:|
| Claim of former spouse | $ 60,000.00[12] |
| Former spouse's legal fees | 120,168.74[13] |
| Debtor's legal fees | 30,858.07 |
| Credit cards from prior marriage | 85,380.26 |
| Other | 3,261.31 |
| Total | $ 268,810.31[14] |

It is beyond doubt that the debtor's schedules and statement of financial affairs were, and continue to be, inaccurate, in ways that understate his ability to make meaningful payments to creditors. The debtor failed to

---

[12] The debtor has filed an adversary proceeding to determine the dischargeability of this debt.

[13] This claim was filed as an unsecured priority claim, as it relates to alimony, maintenance, or support owed to former spouse pursuant to 11 U.S.C. § 507(a)(7). In the earlier Chapter 13 case, the former wife's attorney filed a proof of claim in the amount of $106,055.15.

[14] The total amount of claims filed in this Chapter 7 case is $310,346.03.

disclose that he had received $60,000 within a month before filing. He did not disclose that he holds certain options to purchase Verizon stock. He did not disclose the pre-filing payoff of non-dischargeable federal taxes. He did not list the known claims of his former wife and her divorce attorney, until after the dischargeability deadline had passed. Finally, his amended Schedule J materially overstates his expenses.

As my colleague, Judge Paskay, has explained:

> This Court is in full agreement that the lack of good faith is certainly an important factor in considering a motion to dismiss a Chapter 7 case for substantial abuse. A telling sign and red flag indicating bad faith is an inflated budget, especially an amended budget after the Debtor's right to remain in Chapter 7 is challenged.

Weber, 208 B.R. at 577.

The Court draws the inference that the debtor's failure to accurately report his true financial condition was not inadvertent, because all of the omissions and errors support the debtor's self-portrait as a down-on-his-luck debtor. The debtor owes creditors between $173,572 and $310,346 (per claims filed). He has nearly $900,000 of exempt assets and at least $1,000 per month of disposable income. His conduct, combined with the his ability to pay, warrants a finding of "substantial abuse."

**CONCLUSION**

The debtor has the ability to repay a meaningful portion of his debts from future disposable income. The debtor omitted or misstated numerous material items of required disclosure. The Court has considered the totality of the circumstances presented in this case and finds that granting relief to this debtor would constitute a substantial abuse of the provisions of Chapter 7 pursuant to 11 U.S.C. Section 707(b).

Accordingly, it is hereby

ORDERED:

1. This Chapter 7 case is dismissed.

2. The effective date of the dismissal will be September 23, 2005, prior to which date the debtor may convert this case to Chapter 13.

DONE and ORDERED in Tampa, Florida, this 12th day of September, 2005.

_____
K. RODNEY MAY
United States Bankruptcy Judge

Copies Furnished To:

Douglas W. Meyn, Debtor, 11610 Renaissance View Court, Tampa, Florida 33626

David Steen, Esquire, Attorney for Debtor, 602 South Boulevard, Tampa, Florida 33606

Denise Barnett, Esquire, Office of United States Trustee, Timberlake Annex, Suite 1200, 501 East Polk Street, Tampa, Florida 33602

Shari Streit Jansen, Chapter 7 Trustee, P.O. Box 50667, Sarasota, Florida, 34232